Good morning, ladies and gentlemen. Please be seated. We have five cases on the calendar this morning. Two patent cases, two veterans' cases, and a government employee case. One of the veterans' cases and the employee cases. The cases being submitted on the briefs will not be argued. The first case is Hedwig Lismont v. Alexander Binzel Corporation et al., 2014-1846. Mr. Porcelli. Thank you, Your Honor. May it please the Court. I want to start out by pointing out that the district court legally erred in determining that the German inventorship litigation was not an excuse for latches. It erred by erroneously drawing an inference against my client, Lismont, the non-movement, in violation of Rule 56, that Binzel did not reasonably believe it was likely to be sued over the inventorship of the U.S. patent after the German litigation. Wasn't there a roll of dice there? I mean, why did you wait until 2012 to bring the U.S. litigation or to take any action that would raise the awareness that you were going to assert your rights in the United States at some point? We put it out on the face of the German complaint in December of 2002, Your Honor, that we were contending that they violated our U.S. rights. That's a JA-696. So we put them on notice right at the outset of that 10-year period they were violating our U.S. patent rights. What do you mean by they're violating your U.S. patent rights? I'm trying to understand what it was that you believe you were trying to vindicate in the German litigation. Were you trying to get a correction of inventorship of the U.S. patent in Germany? Well, that's what the district court said. No, I want to know what you think. Do you think you can, through a German litigation, get correction of inventorship of a United States patent? I think if the parties agreed it's conceivable that that can happen. I mean, does the German court have the power to order that? I believe it does. What theory would that be? Well, the parties are before the court, under the jurisdiction of the court, and they would be submitting the issue to the German court, just like in the United States. Would a German court be interpreting United States patent law? It would have to. Right. It would have to. And it didn't. In the end, it didn't. So that's why I am not right now pushing that as hard as maybe I might have before. And I think the reason is there really was an effort in the complaint to point out that the U.S. patent rights had been violated, and to ask for worldwide damages. But there was no express invocation of the U.S. When I looked at the complaint, I didn't see the word or the term worldwide damages. Well, if you look at JA 695 and 694, it asked for damages from every country in which there was a patent. It said that? Yes. It asked for identification of all the foreign patents, and then identification of the sales in each of the countries. Counselor, aside from the reference in the complaint, that's in 2002. Yes. Did you raise the issue in any other form? It wasn't necessary, Your Honor, because we were spending the next ten years litigating in the German court, head-to-head against Binzel. So they saw that we were enforcing our German patent. So your theory was that if I win in German court, I win in the United States? No, we would hope that maybe they would have settled at that point. We would hope that a win in Germany would have brought an end to this. But if that wasn't the case, we had made it real clear they were going to get sued in the U.S. because we put them on notice that we're violating U.S. patent at JA 696. But just to be clear, the notice that you're speaking about, and the only notice that we have in the record, is a 2002 reference in the complaint. Yes, that's correct. Now, remember, there's not much notice needed when you put someone on notice that they're violating your foreign rights, and then you're suing them on the German rights. Now, this court in Mainland v. Standles approved foreign litigation as an excuse. That's 799F2nd 746 in 1986. So foreign litigation has been considered an excuse, and at the outset of the foreign litigation, there was notice. Is this an excuse without your saying, we're going to come after you later? That's right, because the we're going to come after you later was held in Ackermann not to be a rigid rule. If it's clear, and remember, this is on Rule 56, this is summary judgment. All reasonable inferences have to be drawn in our favor. And the reasonable inference from two things, suing them in Germany head-to-head for 10 years, and telling them at the outset that they're also violating the U.S. inventorship rights of the U.S. patent, is enough to draw a reasonable inference that they're going to get sued in the United States at the conclusion of Germany. And that inference has to be drawn in our client's favor. What the district court did is drew it in the other side's favor erroneously and said, oh, well, you lost there and we figured you went away. Well, see, that's not right. The reasonable inferences are supported by the facts in our favor. And Ackermann said there was no rigid rule that you have to give express notice. What Adelberg said, and I think it's relevant here, is what you've really got to do is communicate to the other side you're not acquiescing in the U.S. violation. And that's what was done here. By putting that in the German complaint, Lisman is telling them, look, I'm not acquiescing in what you're doing in the United States, but I'm an individual, and I'm not wealthy, and I can spend only so much money, and in Germany, there's no such thing as contingent fee. You've got to pay the lawyers. So for 10 years, he's paying lawyers to prosecute perhaps his second most important patent. Why second? Because the U.S. market is the biggest country market of all 10 patents that he got. And I think it's singularly noteworthy that the only patent country— Because he's Belgian, and he does business in Germany very regularly, it's a lot easier for him to bring a suit near his home in Germany and get that established, rather than go across the ocean. Aside from bringing a suit in the United States, he could have sent a letter and put them on notice that one way or the other, with this terminal lawsuit, I'm going to come after you, I have rights in the United States that I want to seek to vindicate in court, etc. But none of that happened, so you're facing latches. I mean, it's a lengthy delay. The delay, Your Honor, we submit is excused by the fact that they knew we were prosecuting the German litigation against them. So they knew that we did not acquiesce in inventorship. We did not acquiesce that the inventorship of any of these patents was correct. But what's in doubt, isn't what's in doubt here is, A, whether you're going to win at all in Germany, and B, even if you win in Germany, what's the effect of that result in the U.S. under U.S. law? It shouldn't matter what the effect is, because if we litigate in Germany to the end, and we win or we lose, then we can, quite rightfully as an individual, then turn and sue in the United States on the United States patent. Because if Germany isn't going to decide the U.S. issue, and in the end they didn't, Your Honor, they didn't decide the U.S. issue, if they're not going to decide it, then it was perfect right to go ahead and let them assume that we were going to sue in the U.S. Even in the German litigation, there's no evidence, there's nothing in the record that indicates that you advanced a U.S.-based argument, that you introduced evidence or argued your U.S. theory. That's why the finding by the district court is a little bit not supported by a lot of evidence, and what is clear, what is not in dispute, is that right on the face of that second German complaint, we said, you are violating our U.S. inventorship rights. Your declaration filed in the United States was fraudulently obtained under U.S. law because you said you were the inventor of the U.S. patent and you weren't. So that's crystal clear. They could not possibly say we acquiesced in what they were doing in the United States. So the only question, Your Honor, is, is it latches to litigate in a foreign country, finish that, and go in the United States? Well, the policy is you shouldn't have to sue an infringer or all infringers at one time. It's the same kind of argument. You shouldn't have to sue on all countries at the same time. He's an individual. He shouldn't be expected to do that. But what he did was reasonable. He picked the most important country outside of Germany to go second. He didn't go in any of the other countries. So a reasonable person in Binzel's position would know Binzel has an enormous stake in the United States. They are being fought tooth and nail by Lisman in Germany. And Lisman has told them they're on notice of violation of the United States patent rights. The only reasonable inference is that they're going to get sued no matter what happens in Germany because it's too big of a market for Lisman to just walk away from. And that is, in fact, the fact. Now, the fact is that there were two and a half years at the end of the 10-year period when Lisman was not – And that was the Constitutional Court action and the European Court of Human Rights. But the important point here is they don't deny that they knew about those. They don't deny that they knew that Lisman was prosecuting his German patent. He's continuing to do that. And the reasonable inference from them not denying something that was in their authority, in their knowledge, is that they did know, that they did know. And therefore, on Rule 56, we get that inference. And so that two and a half years is just as much of a valid excuse as the original seven and a half years. You're into your rebuttal. We can save it or you can continue. I'll save it, Your Honor, unless there's any questions. No, thank you, Mr. Porcelli. Thank you. Mr. Dozman. Thank you, Your Honor. Doug Dozman on behalf of the appellee at the police court. I'm a little confused now because it appears that the argument that Mr. Porcelli is making here today is different than what was raised in the briefs. He is now saying that there was error below in the court, inferring that there was a lack of adequate notice to the defendant about the intent to bring further action. That wasn't raised in the briefs at all. The only thing that was raised in the briefs was they argued that, well, if in fact the claims were aggregated in Germany, then there is no latches because we were litigating the U.S. issue in Germany the entire time that we were there through 2009. We addressed that in our briefs. But in terms of whether the court found an error or was an error in finding that Lismont did not give adequate notice to the defendant of his intention to bring a U.S. claim, I think clearly there is no such error. This is in summary judgment. Aren't there facts here to be determined? No. In terms of the finding in the court, there were no facts that were disputed. It was undisputed that the plaintiff knew about his claim by 2002. It was undisputed that he didn't bring the U.S. claim until 2012. It's undisputed that that's more than six years, and therefore the presumption arises. And the only issue then was whether this other litigation excuse applies. And there's no dispute that there's only two documents that the plaintiff points to. They point to the 2001 pleading in the German litigation that said that Lismont reserved his right to amend his German claim, and the court found quite rightly, well, that wouldn't put Benzel on notice that they intended to bring a U.S. claim. They just reserved their right in the German litigation to amend those pleadings. The only other thing they pointed to was this June 2002 letter, which made a demand, a settlement demand, and said, if you don't settle with us, we reserve the right to bring appropriate legal action. It didn't say anything about a U.S. claim. But appropriate legal action could encompass correction of inventorship of the United States patent, right? Well, potentially, yes. And then the complaint in December 2002, it does allege that your side committed fraud in filing a declaration in the U.S. Patent Office, alleging that Sattler was the sole inventor, right? Yes, and it brought that claim to the German court. So the question is, from all these facts, is it reasonable to say that there could be an inference from those facts that Mr. Lismont put your side on notice that he has a legal claim in the United States on correcting the inventorship of the United States patent? No, I don't believe so, Your Honor. And the reason is that there's only one inventorship issue here. And that's what seems to be lost in all of this. The court below found that the inventorship issue was exactly the same between the German and the U.S. patent. The U.S. patent is just a foreign counterpart to the German patent. The inventorship issue is exactly the same. It's the same issues, it's the same facts, it's the same witnesses, it's the same invention. Are you saying that a German court could resolve U.S. patent rights? I'm saying that a German court could determine the inventorship issue. Under German law, but not under the United States law. That's correct, Your Honor. So it would require a second legal action, that is, one in the United States, in order to figure out who should be the proper named inventor for the United States patent under United States patent law. Not at all, because the facts and the issues and the witnesses are the same. The legal issue. I agree with you. If German law and United States law were identical, and also that there was some kind of law where a foreign court could enforce United States law, but I don't think either of those two premises are true. They're not true. The standard is different. It's tougher in the U.S. than it is in Germany. In Germany, it's preponderance of the evidence, and U.S. is clear in convincing evidence. So you would have even a harder time here showing inventorship. The point is that they're different. I'm sorry? The point is that they're different. Well, if they're different, then that claim could not be aggregated in the German litigation, and the 10-year time gap is too long. It largely applies. If they couldn't determine that issue in Germany, then it was incumbent on the plaintiff to bring his U.S. claim in a timely manner. He did not. Right. The question is whether he gave you proper notice, or whether there's evidence in the record from which there could be a reasonable inference that he gave you proper notice. Well, the court dealt with that, I thought, quite appropriately by saying the only, really the only piece of evidence that they point to is this June 2002 letter saying that, you know, you should settle up with us, both with the German litigation and any other claims that we might have. Better settle up with us by July, or we will bring appropriate legal action without further notice. That's what the letter says. It doesn't say anything about a U.S. claim. It doesn't put the defendant on notice that he intends to bring a U.S. claim. And then several months later, they do bring a second claim. They bring the German claim that aggregates the damages claims for all. So the plaintiff, what the court found, and I think the reasonable inference is, is that Bensel was right in assuming that the inventorship issue as a whole was going to be determined in the German proceedings. And the court determined that no reasonable fact finder could conclude that the June 2002 letter put defendants on notice that plaintiffs intended to enforce the U.S. patent in the U.S. Did you read the December 2002 complaint as aggregating all worldwide damages? What it asked for is damages for any sales under this patent anywhere in the world where there was a patent issue. There's, I think, ten foreign counterparts of this German patent that exist. So it didn't even specify the U.S. It just said we want information and damages for anywhere else that this patent is issued. Well, it didn't say anywhere else. It simply said appropriate legal action. And from a German attorney to a German company, your point is that it would appear to be limited to Germany. Yes. That would be the reasonable inference. And then they did bring this later action in Germany where it looks like they're going to pursue their claims there. They followed through on it. They followed through on it in December of that year by filing the second German complaint. And they point to nothing else as giving notice to the defendants that there was any intention to ever pursue this claim in the U.S. So the other litigation excuse the court found quite properly, first of all, it's not an automatic excuse, and second of all, if it's going to apply, you have to give the defendant adequate notice, especially if the parties have had previous dealings with each other. You have to put them on notice that they're likely to be sued in the U.S. And based on the record in front of the trial court, there was no such adequate notice. And I will point out that finding by the court was not appealed to this court. They didn't say in their briefs that the court blew it and made the wrong inference based on the facts to find whether or not there was adequate notice. Their whole argument on appeal is, well, okay, we'll agree. We did aggregate our claims there in Germany, and therefore laches doesn't apply. That's the argument that we responded to because that's the argument that they raised and the only argument that they raised on appeal. And if they're going to go over there, I mean, our briefs give all the arguments, but essentially if that's correct, if they did aggregate their claims, then it's not collateral estoppel. It's really res judicata. They picked their forum. They made their claim. They lost. They've had a full and fair opportunity to make their inventorship claim, and the German court found you didn't carry your burden. And it's a muddled mess. Nobody had clear documentary evidence of the conception of the invention. The witnesses were all over the place, had muddled memories. Even then in 2008, let alone now, we are now talking about events, by the way, that occurred over 20 years ago. That's exactly the reason why. Did the court find prejudice? What's that? Did the court find prejudice? It did, and those findings were not appealed to this court. It found both evidentiary and economic prejudice. Someone died. Yeah, a witness died. And obviously memories fade. Now we're talking about events over 20 years ago. And he found economic prejudice as well. And again, none of those findings were appealed to this court. So, you know, at the end of the day, either they aggregated their U.S. claims in Germany or they did not. If they did, those claims were decided against them. They went through an appeal. It's a final judgment. That case is over. If they did not aggregate those claims, then laches applies. Because, as the court found, none of these issues are being challenged or disputed on appeal. It was over 10 years from when the plaintiff knew about his claim until when he brought his claim here. That presumption arises in the June 2002 letter, which is really the only piece of evidence that the plaintiff put forward below saying we gave you notice. What about the December 2002 complaint? That says nothing about bringing a claim in the U.S. Well, it accuses your side of all kinds of mischief with the U.S. Patent Office. Well, again, there's one inventorship claim. We are aware that Mr. Lismont was claiming that he was the inventor of this invention. I think the point is that that complaint, at a minimum, put you on notice that he believes that you violated U.S. patent law by allegedly filing a declaration that's false. It put us on notice that he was seeking damages worldwide for the one inventorship claim. It was reasonable to assume that they were pursuing those claims in Germany, not in the U.S. I would suppose whether the U.S. rights claim was aggregated or not in Germany shouldn't make a difference for your laches argument because whether Lismont aggregated or didn't aggregate, your point is ultimately that Lismont never really properly gave notice that he would ever file a second action on the other side of the globe in the United States. Yes, and that's what the district court found, and that finding was not appealed. This is the first argument that Lismont has made today this morning that somehow that was a wrong inference. You can look in the briefs. It's not there. It seems to me that this is not so much about whether you got notice or the notice was appropriate notice or not. The record is clear that you were put on notice, and it mentions U.S. rights, and somehow you knew of the potential. The problem here is that after you received that, this amount of time went by, and the district court looks at that and says, is that a reasonable delay or not? Right. Whatever you make of the June 2002 letter, I suppose, the fact is there was nothing that happened after that to put Ben Salon notice that they intended to pursue their U.S. claims. In that 10 years, that's too long. The presumption arises there's a reason for the presumption, and it makes sense here. If your honors don't have any further questions. Thank you, Mr. Dozman. Mr. Porcelli has three and a half minutes in rebuttal. Thank you, your honor. Your honor, there's no dispute whatever that the 10 years that my client spent litigating in Germany was perfectly diligent on his part. There's no one saying that he deliberately slowed it down or anything.  I don't know, he doesn't count wrong, and I think in violation of this court's ordering in Mainland versus Standles. As far as prejudice, well, there's no prejudice because prejudice must involve a change because of and as a result of the delay. So the delay in suing in the United States must cause that prejudice, their change of economic condition. But they knew that they were on notice of the U.S. violation. They knew they were going to get sued in the U.S., and therefore, whatever they chose to do in the way of ramping up. How did they know that they were going to get sued in the U.S.? The letter didn't mention the U.S. But the complaint did. The complaint put them on notice. And if I may, director, your honor, what I was referring to is JA-696 is the second German complaint. Well, I mentioned a false declaration. But it's pointing out that there is a violation under U.S. law. It's specifically referring to U.S. law. It's speaking, it's very clear, it's not talking about German law. It's talking about the obligations to give a truthful declaration. It says, to this the defendant in number four, Sattler, falsely delivered declaration to the defendant Binzel, this is a paraphrase, that he was the sole inventor. This was submitted to the appropriate American patent office. And earlier it said on 696, it is generally known during entry into the national phase in the U.S.A., it's an absolute requirement of the applicant to take an affirmation oath. That's just kind of paraphrasing your view, or the view of U.S. law. It doesn't say anything like, and we hereby reserve the right to pursue this action in the United States, or anything like that. Well, that would be putting form over substance for him to say that, having put them on notice. No, I'm not putting form over substance. I think you are, because this doesn't say, there's nothing in here that says anything about you pursuing a U.S. action. But you don't need to, Your Honor, if you point out that they are violating U.S. law. I'm suing you on my German patent under German law, and I tell you, by the way, you're violating my U.S. patent under U.S. law. I don't have to take the next step under Aukerman. No, you can't wait ten years to take the next step. If they know what we're doing for the ten years, see they were sitting across the table, they knew we were in Germany. This isn't a case where we went away and they didn't know what we were doing. They knew for the entire ten years what we were doing, which was pressing that U.S. claim, pressing that German claim, and they had to understand the reasonable inference under Rule 56 is that they understood they were going to get sued in the United States, because the delay wasn't lack of diligence, sitting on one's rights. It was prosecuting actively the German patent. And in mainly these scandals, it was the same thing, prosecuting the Canadian patent. And that was an excuse. Thank you, Mr. Porcelli. We'll take the case under review.